1    **WO**

2

3

4

5

6                    IN THE UNITED STATES DISTRICT COURT

7                        FOR THE DISTRICT OF ARIZONA

8

9    Nicholas Rose,                          )    CIV 16-0298-PHX-MHB
                                             )
10              Plaintiff,                    )    **ORDER**
                                             )
11   vs.                                      )
                                             )
12   Carolyn W. Colvin, Commissioner of the  )
     Social Security Administration,          )
13                                            )
                Defendant.                    )
14                                            )

15          Pending before the Court is Plaintiff Nicholas Rose's appeal from the Social Security

16   Administration's final decision to deny his claim for disability insurance benefits. After

17   reviewing the administrative record and the arguments of the parties, the Court now issues

18   the following ruling.

19                           **I. PROCEDURAL HISTORY**

20          On November 6, 2013, Plaintiff filed an application for disability insurance benefits

21   alleging disability beginning August 1, 2013. (Transcript of Administrative Record ("Tr.")

22   at 11, 134-35.) His application was denied initially and on reconsideration. (Tr. at 11, 58-77.)

23   Thereafter, Plaintiff requested a hearing before an administrative law judge. (Tr. at 11, 91-

24   92.) A hearing was held on July 8, 2015, (Tr. at 11, 24-57), and the ALJ issued a decision

25   finding that Plaintiff was not disabled (Tr. at 8-23). The Appeals Council denied Plaintiff's

26   request for review (Tr. at 1-7), making the ALJ's decision the final decision of the

27   Commissioner. Plaintiff then sought judicial review of the ALJ's decision pursuant to 42

28   U.S.C. § 405(g).

1

## II. STANDARD OF REVIEW

2      The Court must affirm the ALJ's findings if the findings are supported by substantial

3   evidence and are free from reversible legal error. See Reddick v. Chater, 157 F.3d 715, 720

4   (9th Cir. 1998); Marcia v. Sullivan, 900 F.2d 172, 174 (9th Cir. 1990). Substantial evidence

5   means "more than a mere scintilla" and "such relevant evidence as a reasonable mind might

6   accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401

7   (1971); see Reddick, 157 F.3d at 720.

8      In determining whether substantial evidence supports a decision, the Court considers

9   the administrative record as a whole, weighing both the evidence that supports and the

10   evidence that detracts from the ALJ's conclusion. See Reddick, 157 F.3d at 720. "The ALJ

11   is responsible for determining credibility, resolving conflicts in medical testimony, and for

12   resolving ambiguities." Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995); see

13   Magallanes v. Bowen, 881 F.2d 747, 750 (9th Cir. 1989). "If the evidence can reasonably

14   support either affirming or reversing the [Commissioner's] conclusion, the court may not

15   substitute its judgment for that of the [Commissioner]." Reddick, 157 F.3d at 720-21.

16

## III. THE ALJ'S FINDINGS

17      In order to be eligible for disability or social security benefits, a claimant must

18   demonstrate an "inability to engage in any substantial gainful activity by reason of any

19   medically determinable physical or mental impairment which can be expected to result in

20   death or which has lasted or can be expected to last for a continuous period of not less than

21   12 months." 42 U.S.C. § 423(d)(1)(A). An ALJ determines a claimant's eligibility for

22   benefits by following a five-step sequential evaluation:

23      (1)  determine whether the applicant is engaged in "substantial gainful activity";

24      (2)   determine whether the applicant has a medically severe impairment or
          combination of impairments;

25

26      (3) determine whether the applicant's impairment equals one of a number of listed
          impairments that the Commissioner acknowledges as so severe as to preclude the
          applicant from engaging in substantial gainful activity;

27

28

1
2

       (4)   if the applicant's impairment does not equal one of the listed impairments, determine whether the applicant is capable of performing his or her past relevant work;

3
4

       (5)   if the applicant is not capable of performing his or her past relevant work, determine whether the applicant is able to perform other work in the national economy in view of his age, education, and work experience.

5   See Bowen v. Yuckert, 482 U.S. 137, 140-42 (1987) (citing 20 C.F.R. §§ 404.1520,

6   416.920). At the fifth stage, the burden of proof shifts to the Commissioner to show that the

7   claimant can perform other substantial gainful work. See Penny v. Sullivan, 2 F.3d 953, 956

8   (9th Cir. 1993).

9          At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful

10   activity during the period from his alleged onset date of August 1, 2013, through his date last

11   insured of December 31, 2014. (Tr. at 13.) At step two, she found that Plaintiff had the

12   following severe impairments: history of depression, generalized anxiety disorder, and

13   attention deficit/attention deficit hyperactivity disorder. (Tr. at 13-14.) At step three, the ALJ

14   stated that through the date last insured, Plaintiff did not have an impairment or combination

15   of impairments that met or medically equaled an impairment listed in 20 C.F.R. Part 404,

16   Subpart P, Appendix 1 of the Commissioner's regulations. (Tr. at 14-15.) After consideration

17   of the entire record, the ALJ found that, through the date last insured, Plaintiff retained the

18   residual functional capacity "to perform a full range of work at all exertional levels but with

19   the following nonexertional limitations: the claimant could have not public contact and was

20   limited to performing simple, routine and repetitive work tasks involving simple work-related

21   decisions and simple instructions. He could have occasional contact with coworkers and

22   supervisors. The claimant was unable to do fast paced production rate work, but he was able

23   to perform goal oriented work that allows for some variability in work pace."[1] (Tr. at 15-18.)

24   The ALJ found that Plaintiff has no past relevant work, but, considering his age, education,

25   work experience, and residual functional capacity, there are jobs that exist in significant

26

27
28

       [1] "Residual functional capacity" (or "RFC") is defined as the most a claimant can do after considering the effects of physical and/or mental limitations that affect the ability to perform work-related tasks.

1   numbers in the national economy that Plaintiff could perform. (Tr. at 18-19.) Thus, the ALJ

2   concluded that Plaintiff "was not under a disability ... from August 1, 2013, the alleged onset

3   date, through December 31, 2014, the date last insured ... ." (Tr. at 19.)

## IV. DISCUSSION

5       In his brief, Plaintiff contends that the ALJ erred by: (1) failing to properly weigh

6   medical source opinion evidence; (2) failing to provide valid reasons for discounting the

7   opinions from the Department of Veteran Affairs ("VA"); and (3) failing to make a proper

8   finding at step five of the sequential evaluation process.

9   **A.      Medical Source Opinion Evidence**

10      Plaintiff contends that the ALJ erred by failing to properly weigh medical source

11  opinion evidence. Specifically, Plaintiff argues that the ALJ failed to give appropriate weight

12  to Mary Oakley, Psy.D., and Daniel Schulte, Ph.D.

13      "The ALJ is responsible for resolving conflicts in the medical record." Carmickle v.

14  Comm'r, Soc. Sec. Admin., 533 F.3d at 1164. Such conflicts may arise between a treating

15  physician's medical opinion and other evidence in the claimant's record. In weighing medical

16  source opinions in Social Security cases, the Ninth Circuit distinguishes among three types

17  of physicians: (1) treating physicians, who actually treat the claimant; (2) examining

18  physicians, who examine but do not treat the claimant; and (3) non-examining physicians,

19  who neither treat nor examine the claimant. See Lester v. Chater, 81 F.3d 821, 830 (9ᵗʰ Cir.

20  1995). The Ninth Circuit has held that a treating physician's opinion is entitled to

21  "substantial weight." Bray v. Comm'r, Soc. Sec. Admin., 554 F.3d 1219, 1228 (9ᵗʰ Cir. 2009)

22  (quoting Embrey v. Bowen, 849 F.2d 418, 422 (9ᵗʰ Cir. 1988)). A treating physician's

23  opinion is given controlling weight when it is "well-supported by medically accepted clinical

24  and laboratory diagnostic techniques and is not inconsistent with the other substantial

25  evidence in [the claimant's] case record." 20 C.F.R. § 404.1527(d)(2). On the other hand, if

26  a treating physician's opinion "is not well-supported" or "is inconsistent with other

27  substantial evidence in the record," then it should not be given controlling weight. Orn v.

28  Astrue, 495 F.3d 624, 631 (9ᵗʰ Cir. 2007).

1      If a treating physician's opinion is not contradicted by the opinion of another

2 physician, then the ALJ may discount the treating physician's opinion only for "clear and

3 convincing" reasons. See Carmickle, 533 F.3d at 1164 (quoting Lester, 81 F.3d at 830). If

4 a treating physician's opinion is contradicted by another physician's opinion, then the ALJ

5 may reject the treating physician's opinion if there are "specific and legitimate reasons that

6 are supported by substantial evidence in the record." Id. (quoting Lester, 81 F.3d at 830).

7      Since Drs. Oakley and Schulte were contradicted by other objective medical evidence

8 of record, the specific and legitimate standard applies.

9      Historically, the courts have recognized the following as specific, legitimate reasons

10 for disregarding a treating or examining physician's opinion: conflicting medical evidence;

11 the absence of regular medical treatment during the alleged period of disability; the lack of

12 medical support for doctors' reports based substantially on a claimant's subjective complaints

13 of pain; and medical opinions that are brief, conclusory, and inadequately supported by

14 medical evidence. See, e.g., Bayliss v. Barnhart, 427 F.3d 1211, 1216 (9th Cir. 2005); Flaten

15 v. Secretary of Health and Human Servs., 44 F.3d 1453, 1463-64 (9th Cir. 1995); Fair v.

16 Bowen, 885 F.2d 597, 604 (9th Cir. 1989).

17      In her consideration of the objective medical evidence, the ALJ first addressed the

18 opinion of Plaintiff's treating psychologist, Dr. Oakley. According to the record, Plaintiff

19 presented for evaluation to Dr. Oakley on July 3, 2013. He had a GAF of 55, and he reported

20 anxiety and depression. He was diagnosed with anxiety, rule out ADHD, and borderline

21 personality disorder. (Tr. at 389.) On September 12, 2013, Plaintiff presented for a follow-up

22 to Dr. Oakley. His GAF was 50 or below, and his prognosis was guarded with significant

23 anxiety and struggling with his identity. (Tr. at 385.) On February 11, 2014, Plaintiff's GAF

24 was 45, and he reported anxiety triggered by "anything and everything." (Tr. at 384.) Dr.

25 Oakley evaluated Plaintiff again on March 3, 2014. He had a GAF of 45, and did not feel

26 ready to resume classes or employment. (Tr. at 383.) On May 6, 2014 and August 27, 2014,

27 Plaintiff's GAF was 50. He expressed frustration with the VA and trying to cope with

28 anxiety. (Tr. at 381-82.) On November 13, 2014, Plaintiff reported that he dropped his

1  courses as it proved to be too much for him. He was frustrated with instructor and felt he did

2  not get the help he needed. His anxiety was very high, but his medication was decreased as

3  he reported medical marijuana helps with his symptoms. (Tr. at 380.)

4        On January 7, 2015, Dr. Oakley authored a letter on Plaintiff's behalf. The letter

5  discussed the diagnosis of major depression disorder and generalized anxiety disorder with

6  traits of ADHD. Dr. Oakley described Plaintiff's history of enrolling in classes stating that

7  although he is intelligent enough to do the work, even minor stressors are insurmountable and

8  force him to withdraw. Dr. Oakley stated that Plaintiff's symptoms began in January 2010,

9  subsequent to his military service, and that one of his major stressors is dealing with the VA

10  and his financial situation. (Tr. at 390.)

11        Dr. Oakley completed a Mental Residual Functional Capacity Statement and reported

12  Plaintiff's highest GAF in the last year was approximately 50. (Tr. at 392.) In nearly every

13  category of Understanding and Memory, Sustained Concentration, Social Interaction and

14  Adaptation, Dr. Oakley stated that Plaintiff is estimated to have impairment that will preclude

15  performance ten to fifteen percent of an eight hour workday. It is estimated that Plaintiff

16  would be "off task" more than thirty percent of the time, and absenteeism is estimated more

17  than five days per week. (Tr. at 393-94.) Dr. Oakley also completed a therapy session with

18  Plaintiff the same day and the session is consistent with her authored letter. (Tr. at 395.)

19        The ALJ gave partial weight to the medical opinions of Dr. Oakley stating that she has

20  essentially performed the role of treating "counselor" with significant gaps in treatment. The

21  ALJ found that much of Dr. Oakley's opinions are based on Plaintiff's subjective reports of

22  symptoms and functional limitations. Moreover, Dr. Oakley opined that the conclusion that

23  Plaintiff cannot sustain any work is inconsistent with other opinion evidence of record. The

24  ALJ found it significant that Plaintiff reported that if the issue of obtaining benefits could be

25  resolved he would be more likely better able to deal with his symptoms and receive relief.

26  The ALJ also noted that Plaintiff had been receiving benefits from the Veteran's

27  Administration since July 2013, and that he had managed his symptoms without medication

28  for significant time periods. The ALJ concluded, "the  undersigned is unable to find the

1   claimant more limited than found in this decision based on the information provided by Dr.

2   Oakley."

3          Next, the ALJ evaluated the opinion of Dr. Schulte. On February 13, 2014, Plaintiff

4   was evaluated for a consultative exam by Dr. Schulte. Plaintiff reported his inability to

5   function in a work environment related to his anxiety accompanied by decreased appetite and

6   insomnia, all which significantly reduced his concentration and motivation. He reported acute

7   anxiety episodes at least once daily accompanied by increased heart rate, nausea, and sweaty

8   hands. He also reported occasional suicidal ideation. (Tr. at 359.) He was diagnosed with

9   generalized anxiety disorder and had a GAF of 52. His prognosis for improvement of

10  symptoms was poor. As far as work capability, Dr. Schulte noted that although psychological

11  factors would not prevent Plaintiff from being able to function entirely in a work

12  environment, it would require flexible work requirements and limited social engagement. (Tr.

13  at 363.) On the medical source statement, Dr. Schulte opined that Plaintiff's understanding

14  and memory would not be impaired although his symptoms would periodically impair his

15  ability to sustain concentration and persistence, limiting his ability to carry out instructions.

16  Dr. Schulte stated that appropriate social interactions in work settings would be significantly

17  impaired as well as limitations in ability to respond to appropriate changes in the work

18  setting, maintaining awareness of normal hazards, and taking appropriate action. (Tr. at 364.)

19         The ALJ gave the opinions Dr. Schulte "some weight." Specifically, the ALJ stated

20  that Dr. Schulte recognized the symptoms of Plaintiff's anxiety disorder, which require that

21  Plaintiff has "somewhat flexible work requirements," including the need for limited social

22  contact in the work place. However, the ALJ found that Dr. Schulte also noted that the

23  claimant "demonstrated no significant impairment in his ability to understand and remember

24  simple instructions, detailed  instructions and work like procedure."

25         Lastly, the ALJ addressed the opinions of the state agency medical consultants. In

26  February 2014, state agency psychologist, Eugene Campbell, Ph.D., reviewed the medical

27  record, including approximately 25 mental health appointments between January 2011 and

28  July 2011, as well as the consultative psychologist's examination. (Tr. at 63-64.) Dr.

1   Campbell concluded Plaintiff did not even have a severe mental impairment. (Tr. at 64.) In

2   November 2014, state agency psychologist, Raymond Novak, M.D., reviewed the record and

3   concurred with Dr. Campbell's opinion. (Tr. at 72-73.) The ALJ stated: "the undersigned

4   assigns partial weight to the medical opinions of the state agency medical consultants'

5   opinions found within exhibits 2A and 3A. The two psychological consultants determined

6   the claimant had an anxiety disorder and believed the claimant's alleged mental impairments

7   were not severe. The undersigned does not agree that the claimant's only mental impairment

8   is a non-severe anxiety disorder. The totality of the evidence shows the claimant has multiple

9   mental impairments, which are severe. However, the undersigned agrees with the conclusion

10  of the consultants that the claimant has not met his burden to proof in order to establish

11  disability."

12          The Court finds that the ALJ properly weighed the medical source opinion evidence

13  related to Plaintiff's alleged impairments, and gave specific and legitimate reasons, based on

14  substantial evidence in the record to support her findings. The ALJ properly discredited the

15  opinions of Drs. Oakley and Schulte due to inconsistencies with Plaintiff's medical evidence

16  as a whole. The ALJ also reasoned that said opinions lacked supporting clinical findings, and

17  were primarily based on Plaintiff's self-reports. See, e.g., Morgan v. Comm'r Soc. Sec.

18  Admin., 169 F.3d 595, 602 (9th Cir. 1999) (citing Fair, 885 F.2d at 605) (An ALJ may reject

19  a treating physician's opinion if it is based "to a large extent" on a claimant's self-reports that

20  have been properly discounted as incredible.); Tommasetti v. Astrue, 533 F.3d 1035, 1041

21  (9th Cir. 2008) (incongruity between treating doctor's questionnaire responses and her

22  medical records provided a specific and legitimate reason for rejecting the doctor's opinion

23  of claimant's limitations); Connett v. Barnhart, 340 F.3d 871, 875 (9th Cir. 2003) ("We hold

24  that the ALJ properly found that [the physician's] extensive conclusions regarding [the

25  claimant's] limitations are not supported by his own treatment notes. Nowhere do his notes

26  indicate reasons why [the physician would limit the claimant to a particular level of

27  exertion]."); Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir. 2001) (holding that the ALJ

28  properly rejected a physician's testimony because "it was unsupported by rationale or

1   treatment notes, and offered no objective medical findings to support the existence of [the

2   claimant's] alleged conditions"); Batson v. Comm'r of Soc. Sec., 359 F.3d 1190, 1195 (9th

3   Cir. 2004) (ALJ may discredit treating physicians' opinions that are conclusory, brief, and

4   unsupported by the record as a whole, or by objective medical findings); Molina v. Astrue,

5   674 F.3d 1104, 1111 (9th Cir. 2012) ("We have held that the ALJ may permissibly reject

6   check-off reports that do not contain any explanation of the bases of their conclusions.").

7         Therefore, the Court finds no error.

8   **B.      The VA's Disability Rating**

9         Plaintiff next contends that the ALJ erred by failing to provide valid reasons for

10  discounting the opinions from the Department of Veteran Affairs.

11        The ALJ "must ordinarily give great weight to a VA determination of disability."

12  McCartey v. Massanari, 298 F.3d 1072, 1076 (9th Cir. 2002). Less weight may be afforded

13  to such a determination only by providing "persuasive, specific, valid reasons for doing so

14  that are supported by the record." Id.

15        According to the record, Plaintiff received a 100% disability rating from the VA with

16  "total occupational and social impairment." The evaluation discusses major depressive

17  disorder and generalized anxiety disorder documenting "feeling sad, isolating, lack for

18  motivation, irritability, guilt, trouble sleeping." The anxiety is described as "significant

19  worry, variety of triggers, sweaty hands, increased heart rate, mind goes blank." The VA

20  agrees that "both occupational and social impairment are caused by both anxiety and

21  depression" and establishes that the Global Assessment of Functioning is between 45 to 50.

22        The ALJ's entire discussion of the VA's disability rating is as follows:

23       The undersigned gives no weight to the Veterans Administration's ("VA")
    service-connected disability evaluation letters that were issued in October
24       2014 and July 2015 (exhibits 2D/ 1-2 and 9D, respectively). The claimant's
    100% disability award documented in these letters is not supported by any
25       explanation of the evidence relied upon for the award.

26       It appears that in October 2014 someone from the VA completed an unsigned
    Mental Disorders Disability Benefits Questionnaire in which the claimant was
27       diagnosed with a major depressive disorder and GAD. The unknown evaluator
    (although it may have been Dr. Oakley) indicated that the claimant's
28       depression and anxiety interfere with the claimant's occupational and

1
2
educational goals (exhibit 2D/3-6). For reasons previously discussed in this decision, the undersigned gives little weight to the medical opinions of the unknown evaluator.

3      The Court finds that the ALJ's discussion of the VA disability rating was insufficient.

4  The ALJ first gives "no weight" to the VA's 100% disability rating stating that the disability

5  award documented in these letters is not supported by any explanation of the evidence.

6  However, as Plaintiff states in his brief, the VA cited to a previous mental disorder disability

7  benefits questionnaire and the service treatment record. Further, Plaintiff states that the VA

8  file as a whole is full of mental health treatment for anxiety and depression citing to Tr. 248,

9  259, 260, 262, 275, 277, 284, 290, 293, 309, 313, 315, 317, 322, and 323.

10      Then, although the ALJ purported to have read and considered the VA's disability

11  determination, the ALJ dismisses Plaintiff's "total occupational and social impairment"

12  caused by anxiety and depression – by simply stating that "depression and anxiety interfere

13  with the claimant's occupational and educational goals." Finally, the ALJ states for "reasons

14  previously discussed," she gives "little weight" to the unknown evaluator. The ALJ

15  completely fails to specify which "reasons previously discussed" apply to the VA's 100%

16  disability rating.

17      Thus, the ALJ erred by failing to articulate any persuasive, specific, and valid reasons

18  for rejecting the VA's disability rating. Furthermore, the error was not harmless because the

19  ALJ's rejection of the VA disability rating was not "inconsequential to the ultimate

20  nondisability determination." Molina, 674 F.3d at 1121-22.

21      In light of the fact that the Court finds that the ALJ erred by failing to articulate any

22  persuasive, specific, and valid reasons for rejecting the VA's disability rating, the Court

23  declines to reach Plaintiff's remaining argument regarding the ALJ's step five analysis. The

24  Court will order that the decision of the ALJ be vacated and the case be remanded.

25      "[R]emand for further proceedings is appropriate where there are outstanding issues

26  that must be resolved before a determination can be made, and it is not clear from the record

27  that the ALJ would be required to find claimant disabled if all the evidence were properly

28  evaluated." Hill v. Astrue, 698 F.3d 1153, 1162 (9th Cir. 2012) (citing Vasquez v. Astrue, 572

1  F.3d 586, 593 (9ᵗʰ Cir. 2009)). "[T]he proper course, except in rare circumstances, is remand

2  to the agency for additional investigation or explanation." INS v. Ventura, 537 U.S. 12, 16

3  (2002) (per curiam). The Ninth Circuit has held that when "additional proceedings can

4  remedy defects in the original administrative proceeding, a social security case should be

5  remanded." Marcia, 900 F.2d at 176 (remanding "to the Secretary for proper consideration

6  of step three equivalence"). Here, the record contains an unresolved issue regarding the

7  ALJ's proper determination of the VA's disability rating that make an award of benefits

8  inappropriate and require further evaluation on remand. While a VA disability rating

9  ordinarily is entitled to great weight, it "does not necessarily compel the SSA to reach an

10  identical result," and it is not clear that social security disability benefits must be awarded

11  in this case. See Hiler v. Astrue, 687 F.3d 1208, 1211-12 (9ᵗʰ Cir. 2012) (holding that a

12  remand for further administrative proceedings is appropriate where the ALJ deviated from

13  the claimant's VA disability ratings and gave no reason for dong so). On remand, the ALJ

14  shall develop the record as needed and issue a new decision containing appropriate findings.

### V. CONCLUSION

16  For the reasons discussed in this Order, the Commissioner's decision will be vacated

17  and this matter will be remanded for further administrative proceedings consistent with this

18  Order.

19  Accordingly,

20  **IT IS ORDERED** that the Commissioner's decision is **VACATED** and this matter

21  is **REMANDED** to the Commissioner for further administrative proceedings as set forth in

22  this Order;

23  **IT IS FURTHER ORDERED** directing the Clerk of the Court to enter judgment

24  accordingly.

25  DATED this 6th day of March, 2017.

Michelle H. Burns
United States Magistrate Judge

- 11 -